UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | CR. NO. 1:05-CR-451 |
| ) | |
| RENE OSWALD COBAR ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT COBAR'S MOTION
TO DISMISS INDICTMENT FOR LACK OF VENUE**

**COMES NOW** the United States of America, by and through the undersigned attorney, and hereby opposes defendant Cobar's motion to dismiss his indictment for lack of venue. Cobar contends that venue is improper in this Court because the conspiracy to distribute occurred within the District of Nevada. Mot. to Dismiss at 20-24. Cobar, however, is charged with conspiracy to *extraterritorially* distribute or manufacture cocaine intending or knowing that the cocaine would be unlawfully imported into the United States in violation of 21 U.S.C. §§ 959, 960, and 963. Doc. Entry 22 (Superseding Indictment). Under Article III, § 2, cl. 3 of the Constitution, it is well-established that Congress has the exclusive right to designate venue for extraterritorial offenses. Congress has done so in § 959(c), designating that proper venue for § 959 offenses lies either in the United States District Court for the District of Columbia or in the district where the defendant is first brought. 21 U.S.C. § 959(c). Accordingly, venue is appropriate in this Court, and Cobar's motion to dismiss should be denied.

FACTS

The Government accepts, for purposes of this motion, the proffered statement of facts.[1]

ARGUMENT

I.  STATUTORY OVERVIEW

It is well-established that Congress can criminalize extraterritorial behavior, especially if it has an effect on the United States. *Blackmer v. United States*, 284 U.S. 421, 436-38 (1932); *United States v. Bowman*, 260 U.S. 94, 98 (1922). Under this authority, Congress has criminalized extraterritorial drug trafficking under two statutes: 21 U.S.C. § 959 of the Controlled Substances Act ("CSA") and 46 U.S.C. App. §§ 1901-1904 (the Maritime Drug Law Enforcement Act or "MDLEA").[2] Both statutes are "intended to reach acts of possession, manufacture, or distribution committed outside the territorial jurisdiction of the United States," 21 U.S.C. § 959(c) & 46 U.S.C. App. § 1903(h), and both mandate that venue "shall" lie wherever the person enters the United States or in the United States District Court for the District of Columbia. 21 U.S.C. § 959(c); 46 U.S.C. App. § 1903(f).[3]

---

[1] The Government notes, however, that under the superseding indictment, Flaco is no longer alleged to be an alias for Victor Manuel Cruz-Garcia. This changed allegation, however, has no effect on the instant motion.

[2] Recently, Congress enacted a third statute criminalizing conduct abroad that "would be punishable under section 841(a) of this title if committed within the jurisdiction of the United States," and if the person knowingly or intentionally provided, attempted to provide, or conspired to provide "anything of pecuniary value to any person or organization that has engaged or engages in terrorist activity." 21 U.S.C. § 960a. To date, no one has been charged under this statute.

[3] Given these similarities, the MDLEA and its caselaw are instructive. The MDLEA makes it "unlawful for any person * * * on board a vessel subject to the jurisdiction of the United States * * * to possess with intent to manufacture or distribute, a controlled substance." 46 U.S.C. App. § 1903(a). The MDLEA also makes it unlawful to attempt or conspire to violate

2

Of relevance here, § 959 makes it unlawful

> for any person to manufacture or distribute a controlled substance in Schedule I or II or flunitrazepam or listed chemical –
>
> (1) intending that such substance or chemical will be unlawfully imported into the United States or into waters within a distance of 12 miles of the coast of the United States; or
>
> (2) knowing that such substance or chemical will be unlawfully imported into the United States or into waters within a distance of 12 miles of the coast of the United States.

21 U.S.C. § 959(a). Section 963 makes it a crime to conspire or attempt to violate § 959. In other words, § 963 makes it illegal to conspire or attempt to manufacture or distribute a controlled substance knowing or intending that it will be imported into the United States. 21 U.S.C. § 963.

II.  THE VENUE PROVISION IN § 959(c) IS CONSTITUTIONAL AS APPLIED TO COBAR

   A.  The Constitution Authorizes Congress to Designate Venue in Extraterritorial Offenses

Article III, § 2, cl. 3 of the United States Constitution provides that "the trial of all crimes shall be held in the state where the said crimes shall have been committed; *but when not committed within any State, the trial shall be at such place or places as the Congress may by law have directed*." U.S. Const. art. III, § 2, cl. 3 (emphasis added).[4] With respect to an extraterritorial offense, Article III, § 2, cl. 3 "impose[s] no restriction as to the place of trial,

---

§ 1903(a). 46 U.S.C. App § 1903(j).

[4] The Sixth Amendment similarly provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." U.S. Const. Amend. VI. Once it is determined that an offense is extraterritorial, the Sixth Amendment's vicinage clause has no application. *Cook v. United States*, 138 U.S. 157, 183 (1891).

except that trial cannot occur until congress designates the place, and may occur at any place which shall have been designated by congress previous to the trial." *Cook v. United States*, 138 U.S. 157, 182 (1891); *see Reid v. Covert*, 354 U.S. 1, 7-8 (1957) (given its "obvious meaning, § 2 is applicable to criminal trials outside of the States as a group without regard to where the offense is committed or the trial held").

      The Supreme Court has long recognized the importance of Congress's constitutional authority to designate venue in extraterritorial offenses: "'As crimes * * * may be committed on the high seas and elsewhere, out of the territorial jurisdiction of a state, it was indispensable that in such cases congress should be enabled to provide the place of trial.'" *Cook*, 138 U.S. at 182 (quoting Justice Story, 2 Story, Const. § 1781).[5]  From the early days of the Republic, Congress has enacted venue provisions governing extraterritorial offenses, and the Supreme Court has upheld its authority to do so under Article III, § 2, cl. 3.  *See, e.g., Reid,* 354 U.S. at 8 ("From the very first Congress, federal statutes have implemented the provisions of § 2 by providing for trial of murder and other crimes committed outside the jurisdiction of any State 'in the district where the offender is apprehended, or into which he may first be brought.'") (internal citations omitted); *Cook*, 138 U.S. at 181-82 (discussing the Act of April 30, 1790, which established that "the trial of crimes committed on the high seas, or in any place out of the jurisdiction of any particular state, shall be in the district where the offender is apprehended, or into which he may first be brought."); *Jones v. United States*, 137 U.S. 202, 211-12 (1890) (Congress had constitutional

---

      [5] The text of Justice Story's commentaries can be found on-line at http://www.constitution.org/js/js_338.txt, although the quoted language appears under § 1775 of that document.

authority to designate venue for a murder committed on a "guano island" under 1856 Guana Islands Act); *United States v. Jackalow*, 66 U.S. 484, 486-87 (1861) (holding that Congress has the constitutional authority to designate venue for offenses that occur outside the jurisdiction of a state); *United States v. Dawson*, 56 U.S. 467, 484 (1853) (same).

B.     § 959 Expressly Criminalizes an Extraterritorial Offense

Under this long standing Supreme Court jurisprudence, § 959, and its accompanying conspiracy provision § 963, fall squarely within Congress's constitutional authority to designate venue for crimes committed outside the territory of a state. The clear language of § 959 and its role within the statutory framework as a whole establish that § 959 is a modern, and specific, exercise of Congress's constitutional authority to designate venue for extraterritorial offenses. Because § 959 expressly applies extraterritorially and venue was established prior to trial, venue in this Court, pursuant to § 959(c), is constitutional. *Cook*, 138 U.S. at 182. No further inquiry is necessary.

As the express statutory language makes clear, § 959 "is intended to reach acts of manufacture or distribution committed *outside the territorial jurisdiction of the United States*." 21 U.S.C. § 959(c) (emphasis added); *see United States v. King*, 552 F.2d 833, 850 (9th Cir. 1976) ("Adopted in 1970, the statute is expressly aimed at having extraterritorial effect."). Inherent in § 959 and § 963 as charged is the prerequisite that the manufacturing or distribution of the controlled substances or listed chemicals occur *outside* the United States, with the intent or knowledge that the drugs are destined for import *into* the United States. 21 U.S.C. §§ 959, 963. Therefore, it is impossible to violate § 959 (or conspire to violate § 959) without the very essence of the crime occurring outside the United States. Thus, by its express terms, a violation of § 959

5

(and by extension a conspiracy to violate § 959 under § 963) does not occur within the territory of a state for venue purposes.

That § 959 is exclusively extraterritorial is also evident from the statutory context as a whole. Under the CSA, Congress has enacted two complementary provisions that penalize manufacturing or distributing a controlled substance: 21 U.S.C. § 841(a) (and § 846, its accompanying conspiracy provision) applies to domestic drug trafficking, while 21 U.S.C. § 959 (and § 963, as charged) applies to extraterritorial drug trafficking. Section 959 is a separate and independent provision, targeting extraterritorial offenses that do not necessarily fall within § 841(a) and do not occur within the jurisdiction of a state. Section 963 is a conspiracy provision independent of the purely domestic conspiracy provision found in § 846 and can be applied in extraterritorial cases. Against this backdrop, it is beyond cavil that § 959 and a conspiracy to violate § 959 under § 963 are extraterritorial offenses under Article III, § 2, cl. 3.

    C.    The Conspiracy Provision Does Not Alter the Extraterritorial Nature of the Offense

Cobar attempts to shift focus from the extraterritorial nature of § 959 by isolating the accompanying conspiracy provision (§ 963) and by proclaiming that the conspiracy occurred within Las Vegas for venue purposes, because that is where Cobar used his telephone to contact his co-conspirators who were operating primarily abroad. Mot. to Dismiss at 22.[6] Cobar's argument is flawed, however, on several levels.

---

[6] To the extent Cobar suggests the conspiracy was "hatched" in Las Vegas because that is where he met with an undercover DEA agent, his assertion is legally without merit. A defendant cannot conspire with a Government agent. *United States v. Nelson*, 165 F.3d 1180, 1184 (8th Cir. 1999); *United States v. Kelly*, 888 F.2d 732, 740 (11th Cir. 1989); *United States v. Giry*, 818 F.2d 120, 126 (1st Cir. 1987); *United States v. Pennell*, 737 F.2d 521, 536 (6th Cir. 1984).

**1. Section 963 cannot be read in isolation.** First, Cobar's legal analysis works only so long as one reads § 963 in isolation. Such an interpretation defies the plain language of § 963, which reads:

> Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

21 U.S.C. § 963. This language has two logical consequences. First, by definition, § 963 cannot stand on its own. It must be read in conjunction with the underlying substantive offense, here § 959. This indisputable fact is highlighted by the indictment in this case, which – as Cobar acknowledges – charges § 963 in conjunction with § 959. *See* Mot. to Dismiss at 1. Second, § 963 treats a conspiracy and/or attempt as coterminous with the underlying substantive offense. When the two provisions are read together, as they must be, it is clear that Cobar is charged with conspiring to commit an *extraterritorial* offense. *Cf. United States v. Suerte*, 291 F.3d 366 (5th Cir. 2002) (defendant charged in district where "first brought" for conspiracy to violate the MDLEA). Consequently, Cobar's reliance on cases analyzing domestic drug conspiracies is misplaced.

A related – and equally unpersuasive – argument is Cobar's claim that § 963 is not extraterritorial because it does not include the § 959(c) venue language. As a rule, however, conspiracy provisions do not include an independent venue provision. *See, e.g.,* 18 U.S.C. § 371 (conspiracy to commit offense or to defraud United States); 18 U.S.C. § 372 (conspiracy to impede or injure officer); 18 U.S.C. § 1117 (conspiracy to commit murder); 21 U.S.C. § 846 (attempt and conspiracy to commit domestic drug trafficking); 46 U.S.C. App. § 1903(j) (conspiracy to possess with intent to manufacture or distribute a controlled substance on board a

vessel subject to United States jurisdiction).  To suggest that § 963 cannot be extraterritorial because it has no venue provision is inconsistent with the general approach to venue adopted in the criminal code.[7]

**2. The *locus delicti* of the crime is extraterritorial**.  Cobar's conspiracy analysis is also unpersuasive because it runs counter to Supreme Court analysis in an analogous case – *United States v. Rodriguez-Moreno*.[8]  In *Rodriguez-Moreno*, the Court rejected a conceptually similar effort to bifurcate two interrelated crimes (kidnaping and the use of a gun during a crime of violence) for venue purposes.  *United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999).  In that case, the Court held that the kidnaping charge was the "crime of violence" that made the use of a gun illegal under 18 U.S.C. § 924(c).  The Court explained:

> the *locus delicti* [of the charged offense] must be determined from the nature of the crime alleged and the location of the acts constituting it.  In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts.

*Rodriguez-Moreno*, 526 U.S. at 279 (internal citations and quotations omitted).  Here, Cobar takes an approach analogous to that rejected in *Rodriguez-Moreno*.  He tries to divorce the conspiracy charge from "the nature of the crime" for purposes of determining venue; in so doing,

---

[7] Again, the MDLEA provides a useful comparison.  Under the MDLEA, conspiracy to traffic drugs in the maritime context is also a crime, and the language is identical to that used in § 963.  *Compare* 21 U.S.C. § 963 *with* 46 U.S.C. App. § 1903(f).  Like § 963, § 1903(f) does not contain language about extraterritoriality, yet persons are routinely prosecuted for conspiracy to violate the MDLEA in the venue where they are first brought.  *See, e.g., United States v. Tinoco*, 304 F.3d 1088 (11th Cir. 2002); *Suerte*, 291 F.3d at 366.

[8] *Rodriguez-Moreno* is not directly on point, because that case involved a statutory provision that did not designate the venue location, which is a sharp contrast to the instant case.  *Rodriguez-Moreno*, 526 U.S. at 279 n.1.  Nonetheless, the Court's general analysis is instructive in regards to Cobar's § 963 argument.

he conflates the commission of the criminal act with the commission of overt acts. Thus, in light of *Rodrigeuz-Moreno*, the § 963 offense, as charged in this case, is extraterritorial for purposes of determining venue. The fact that Cobar remained in the United States during this conspiracy does not alter the extraterritorial nature of the object of the conspiracy or the underlying substantive crime. Venue, therefore, is governed by the plain language of § 959(c), which is the underlying substantive crime.

      **3. The conspiracy was not formed solely in Las Vegas, Nevada**. Contrary to Cobar's argument (Mot. to Dismiss at 22-25), the conspiracy was not formed in Las Vegas. The fact that Cobar used a telephone in Las Vegas to communicate with his co-conspirators does not mean that Nevada alone is the locus of the conspiracy. Indeed, there is no logical or legal reason why Cobar's presence in Las Vegas mandates that the conspiracy was formed there, when he admits that his co-conspirators never entered Nevada and that the operation involved the purchasing of cocaine in Central America. *Cf. Travis v. United States,* 364 U.S. 631, 636 (1961) (*"*Venue should not be made to depend on the chance use of the mails, when Congress has so carefully indicated the locus of the crime."*).

      Cobar's own analysis is consistent with the formation of the conspiracy abroad, as that is where his co-conspirators operated and telephoned him. Thus, even if Cobar's domestic conspiracy cases are applicable,[9] they only serve to undercut his argument. For example, in *Hyde v. United States*, cited by Cobar, the Supreme Court held that:

---

[9] The Government reiterates that once the "offense" is deemed extraterritorial, the venue provision is constitutional and no further analysis is necessary or appropriate. *Cook*, 138 U.S. at 182. Nonetheless, given Cobar's extensive citation of domestic conspiracy cases, the Government argues, in the alternative, that these cases also support venue in the District of Columbia.

9

> "when any offense against the United States is begun in one judicial circuit and completed in another, it shall be deemed to have been committed in either, and may be dealt with, inquired of, tried, and determined, and punished in either district, in the same manner as if it had been actually and wholly committed therein."

*Hyde v. United States*, 225 U.S. 347, 360 (1912) (quoting *Hyde v. Shine*, 199 U.S. 62 (1905)). Therefore, taking Cobar's argument to its logical conclusion, venue in the District of Columbia would also be appropriate under 18 U.S.C. § 3237, because the extraterritorial overt acts of the conspiracy trigger § 959(c). *See United States v. Smith*, 452 F.3d 332, 334 (4th Cir. 2006) ("venue rules do not require the government to prosecute in any particular district when venue lies in multiple locations"); *United States v. Bowens*, 224 F.3d 302, 309 (4th Cir. 2000) (holding venue proper in Eastern District of Virginia notwithstanding that many of the events related to the drug conspiracy occurred outside Virginia); *United States v. Williams*, 589 F.2d 210, 213 (5th Cir. 1979) ("The venue statutes are not mutually exclusive, and a suggestion that venue is proper under § 3237(a) will not serve to divest venue from another judicial district if venue is proper in that district under § 3238.").

    **4. *Gilboe* does not support Cobar's analysis.**  Cobar's reliance upon *United States v. Gilboe*, 684 F.2d 235 (2d Cir. 1982) to support his analysis is misplaced for several reasons. First, *Gilboe* involved 18 U.S.C. § 3238, a statute unlike § 959(c), in important respects.[10]

---

[10] Section 3238, entitled "Offenses not committed in any district," reads as follows:

> The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of last known residence of the offender or of any one of two or more joint offenders, of, if no such residence is known, the indictment or information *may* be filed in the District of Columbia.

Section 959(c), upon which the Government exclusively relies for venue, is very specific and mandatory: "Any person who violates this section *shall* be tried in the United States district court at the point of entry where such person enters the United States, or in the United States District Court for the District of Columbia." 21 U.S.C. § 959(c). Under the clear language of the statute, venue in the District of Columbia is appropriate. *Cf. United States v. Rendon,* 354 F.3d 1320, 1325-26 (11th Cir. 2003) (venue was proper in the Middle District of Florida even though crime was not committed there, because it was where defendant first entered the United States); *United States v. Mosquera*, 192 F.Supp.2d 1334, 1338 (M.D.Fla. 2002) (venue proper where defendant first brought into the United States).

Second, the language in *Gilboe* upon which Cobar relies is *dictum*. *See United States v. Levy Auto Parts of Canada*, 787 F.2d 946, 950-51 (4th Cir. 1986). Third, to the extent *Gilboe* is even relevant, it is inconsistent with the rulings of other circuits. *See, e.g., United States v. Jensen*, 93 F.3d 667, 671 (9th Cir.1996) (Fletcher, J., concurring) ("That the defendants also operated their vessels within the District of Alaska does not remove section 3238's applicability – the alleged offense was still 'begun or committed' upon the high seas * * *") (citing 8A James A. Moore et al., Moore's Federal Practice ¶ 18.06[3] (2d ed.1995)) (additional citations omitted); *Levy*, 787 F.2d at 950-52 (finding venue appropriate under § 3238 when conspiracy was "essentially foreign," even when some overt acts occurred in United States); *United States v. Erwin*, 602 F.2d 1183, 1185 (5th Cir.1979) ("that venue may also be appropriate in another district will not divest venue properly established under § 3238"); *United States v. Bin Laden*, 91

---

18 U.S.C. § 3238. The use of the permissive "may" in § 3238 further highlights the difference between that section and § 959(c). Cobar's reading of § 959(c) effectively eliminates this critical distinction.

F. Supp. 2d 600, 613 n.23 (SDNY 2000) (collecting cases).

**5. Cobar's analysis renders § 959 a nullity.** Taken to its logical conclusion, Cobar's argument renders § 959 a virtual nullity. In most § 959 cases, there will be some overt acts in the United States because drug traffickers must locate purchasers for their wares and must resolve the logistical problems of drug trafficking – transportation, security, and payment. Yet, under Cobar's analysis, any drug trafficker who makes even a single phone call to any place in the United States can claim venue in that district. Logically, such a result is possible regardless of whether venue is in the District of Columbia or where the person is "first brought."[11] Such a result eviscerates Congress's long standing constitutional authority to designate venue when a crime occurs outside of a state. It also ignores the clear, mandatory language of § 959(c).

This case aptly illustrates the flaw inherent in Cobar's argument. Contrary to his assertions (Mot. to Dismiss at 34-35), neither the state of Nevada nor the District Court for the District of Nevada can prosecute this § 959 violation. The language of § 959(c) clearly provides only two alternatives for venue, and Nevada does not fit under either alternative.[12] In this

---

[11] Given § 959's express extraterritorial purpose, it is clear that the "where first brought" language anticipates that some traffickers will be brought to the United States for trial by law enforcement authorities. Under this provision, law enforcement officers will decide where that point of entry would occur. In the case of a person like Cobar, however, who already was in the United States at the time the original indictment was returned in the District of Columbia, this language is logically inapplicable. This is necessarily so, as, in such cases, a person's historical point of entry would likely have little or no basis to support venue for trial of the § 959 case charged.

[12] Section 959(c) does not provide for venue where Cobar initially was arrested (New York) or in the state and district to which he originally was brought to face federal charges (Nevada). Morever, where a § 959 defendant is already in the United States at the time of indictment, his historic, original point of entry does not appear to be a site to which Congress intended to extend venue. *See* note10, *supra*. Thus, in Cobar's case, the only available venue under § 959(c) for an importation charge pursuant to §§ 959, 960, and 963 is the District of

regard, Cobar apparently confuses the difference between venue available with respect to a *domestic* narcotics-distribution conspiracy under 21 U.S.C. § 846 (in conjunction with a domestic distribution scheme under § 841), and that available with respect to a *foreign* narcotics-importation conspiracy under 21 U.S.C. § 963 (in conjunction with a foreign distribution scheme under § 959). The United States Attorney's Office in Nevada has no venue to prosecute a § 963/§ 959 *importation* conspiracy against Cobar and his colleagues because it cannot qualify under the two bases for venue set forth in § 959(c). In turn, the Narcotic and Dangerous Drug Section of the Department of Justice has no venue to prosecute a § 846/§ 841 *domestic* narcotics-distribution conspiracy in this Court, because of the factors cited by Cobar in his brief, *i.e*, none of the acts that led to the formation or furtherance of the domestic conspiracy occurred in the District of Columbia. *See* Mot. to Dismiss at 21-28. Thus, if Cobar cannot be tried in the District of Columbia, he cannot be tried anywhere for his violation of § 959. This is an absurd result that is not supported by the plain language of the statute or the widely-recognized right of Congress to criminalize extraterritorial activity.[13]

---

Columbia.

[13] Cobar fails to apprehend that Congress chose to enact separate statutory provisions to enable prosecution of domestic and foreign narcotics trafficking cases. In some cases, such as this one, the facts will overlap and support prosecution of both a domestic and a foreign conspiracy. Had the United States Attorney's Office for the District of Nevada not decided, for reasons of judicial economy, to dismiss its § 846 prosecution of Cobar in light of the § 963 charge against him in the District of Columbia, Cobar simply would have been transferred following his Nevada trial to the District Court of Columbia for trial on the present § 963 charge.

     D.     **Venue for Extraterritorial Offenses is Determined Without Reference to the Defendant's Convenience**

Finally, Cobar asserts that he will be prejudiced by trial in the District of Columbia, because he has lost the support of his family, the ability to be tried in a locale with a 25% Hispanic population, and access to character witnesses. Mot. to Dismiss at 38. As noted above, however, once it is determined that an offense is extraterritorial and venue was determined prior to trial, the constitutional inquiry is complete. *Cook*, 138 U.S. at 182 (Art. III, § 2, cl. 3 "impose[s] no restriction as to the place of trial, except that trial cannot occur until congress designates the place, and may occur at any place which shall have been designated by congress previous to the trial."); *Reid*, 354 U.S. at 7-8 (given its "obvious meaning, § 2 is applicable to criminal trials outside of the States as a group without regard to where the offense is committed or the trial held."). Thus, Cobar's assertions are legally irrelevant.

Cobar's assertions of inconvenience are, in any event, minimal and do not justify disregarding the plain language of § 959(c). Arguably, Cobar will be equally – if not more – inconvenienced if his case is dismissed. Because Cobar cannot be indicted in the District of Nevada under § 959, he would have to be re-indicted there again under 21 U.S.C. § 841(a). As a practical matter, this means his case would have to resume from the beginning, presumably with new counsel.

For the foregoing reasons, the United States respectfully submits that venue is appropriate in the District of Columbia and Cobar's Motion to Dismiss should be denied.

Respectfully submitted, this 18th day of August, 2006.

Kenneth A. Blanco, Chief
Narcotic and Dangerous Drug Section

_____
John M. Gillies
Assistant Deputy Chief

_____
Teresa A. Wallbaum
Appellate Counsel
U.S. Department of Justice
Criminal Division
Narcotic and Dangerous Drug Section
(202) 616-5193

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 18th day of August, 2006, a copy of the foregoing Government's Opposition to Defendant Cobar's Motion to Dismiss Indictment for Lack of Venue was served electronically upon counsel of record.

_____
Teresa A. Wallbaum