**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| UNITED STATES OF AMERICA |
| v. |
| RENE OSWALD COBAR, <u>et al</u>. |

Crim. No. 05-451-01 (RCL)

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT**
**COBAR'S MOTION TO DISMISS INDICTMENT FOR LACK OF VENUE**

The government argues that the venue provision of 21 U.S.C. § 959(c) is constitutional as applied to defendant Cobar because a conspiracy under 21 U.S.C. § 963 to violate 21 U.S.C. § 959(c) is itself an "extraterritorial" offense for purposes of Article III, § 2, cl. 3 and the Sixth Amendment, and thus <u>any</u> prosecution of a § 963 conspiracy to violate § 959(a) <u>must</u> as a matter of law be prosecuted either in the District of Columbia or in the district where the defendant is first brought. Government's Opposition ("Govt. Opp.") at 1-8.

According to the government, once the § 963 conspiracy is deemed "extraterritorial" and given the fact that prosecution is being brought in the District of Columbia as mandated by § 959(c), the "constitutional inquiry is complete." Govt. Opp. at 14. As a consequence, defendant Cobar's reliance on the general law of conspiracy and the objectives that Article III, § 2, cl. 3 and the Sixth Amendment were designed to protect is

1

"misplaced." Govt. Opp. at 7, 14.

As we show, none of the points advanced by the government -- either individually or in combination -- demonstrates by a preponderance that defendant Cobar's motion to dismiss should be denied.

**ARGUMENT**

**THE GOVERNMENT HAS FAILED TO CARRY ITS BURDEN[1] TO PROVE THAT VENUE IN THE DISTRICT OF COLUMBIA IS CONSTITUTIONALLY PERMISSIBLE UNDER THE FACTS OF THIS CASE.[2]**

1.    The government begins its opposition with the two-pronged assertion that under Article III, § 2, cl. 3 Congress can criminalize "extraterritorial behavior" (Govt. Opp. at 3-5) and that § 959(a) expressly criminalizes an "extraterritorial offense." (Govt. Opp. at 5-6). We agree. As we point out in our motion to dismiss, early on Congress implemented Article III in the first crimes act, 1 Statutes at Large, p. 114, passed April 30, 1790, which provided that "the trial of crimes committed on the highs seas, or committed in any place out of the jurisdiction of any State, shall be in the district where the offender is apprehended, or into which he may first be brought." United States v. Dawson, 56 U.S. 467, 488 (1853); Def. Mot. at 17, n. 29. Also, we agree that by its terms, § 959 was designed

---

[1]    The government does not dispute that it "bears the burden of establishing by a preponderance of the evidence that venue is proper with respect to each count charged against the defendant." United States v. Lam Kwong-Wah, 924 F.2d 928, 301 (D.C. Cir. 1991).

[2]    The government accepts the statement of facts set out in our motion to dismiss ("Def. Mot.") at 3-13. Govt. Opp. at 2.

to criminalize acts of narcotic trafficking that do not occur
within the territorial jurisdiction of any state.  As the court
stated in United States v. King, 552 F.2d 833 (9th Cir. 1976),
cited by the government, persons who manufacture or distribute
drugs outside the United States knowing or intending that the
drugs will be imported into the United States can
constitutionally "be held subject to American law [under § 959]
as if they had acted within American territory."  Id. at 852.

2.   Given that § 959(a) is an extraterritorial crime, the
government concludes that a § 963 conspiracy to violate § 959(a)
must also be considered an "extraterritorial offense[] under
Article III, § 2, cl. 3."  Govt. Opp. at 5-6.  According to the
government, the fact that § 963 by its terms is a conspiracy
statute is of no consequence for constitutional venue purposes so
long as the § 963 conspiracy as charged involves a conspiracy to
violate the extraterritorial offense of § 959(a).[3]  Under this
analysis, in a case such as this, where no actual manufacture or
distribution of drugs occurred outside the United States, any
reference to the nature of the crime of conspiracy or the
location of the acts that gave rise to the commission of the
conspiracy, or the furtherance of the conspiracy, is simply not
required.  Indeed, such an inquiry is prohibited because § 959(a)

---

[3]   Section 963 proscribes a conspiracy to commit "any offense
defined in this subchapter."  We note that "Subchapter II -- IMPORT
AND EXPORT," which includes § 963, prohibits narcotic crimes such as
importation, 21 U.S.C. § 952, exportation, 21 U.S.C. § 953, and
failure to register, 21 U.S.C. § 957, which do not by their terms deal
solely with extraterritorial criminal activity.

is "extraterritorial" and "by extension" a § 963 conspiracy to violate § 959(a) is also "extraterritorial" for venue purposes. Govt. Opp. at 6.  In our view, the government's argument is far too simplistic and begs the question to be decided.

3.    Contrary to the government's assertion, we do not argue that simply because § 963 contains no venue provision it follows that "§ 963 cannot be extraterritorial." (Govt. Opp. at 8).  If the facts of a particular case show that a conspiracy to violate § 959(a) was formed and furthered solely <u>outside</u> the United States, the conspirators would be subject to prosecution under § 963 in the District of Columbia or in the district where the conspirators entered the United States under 18 U.S.C. 3258 (and perhaps under § 959(c)).

Our position is fully consistent with the two cases cited by the government involving prosecution under the Maritime Drug Law Enforcement Act ("MDLEA") -- <u>United States</u> v. <u>Tinoco</u>, 304 F.3d 1088 (11th Cir. 2002), and <u>United States</u> v. <u>Suerte</u>, 291 F.3d 366 (5th Cir. 2002).  Govt. Opp. at 7 and 8, n. 7.

In <u>Tinoco</u>, the defendants were convicted of conspiracy to possess and possession with intent to distribute cocaine while on board a vessel subject to jurisdiction of the United States, in violation of 46 U.S.C. app. § 1903(a).  On appeal, the defendants raised several issues -- legality of the search of the vessel, sufficiency of the evidence, and various evidentiary points -- but did not contest venue in the Middle District of Florida where they were brought after their arrests.  304 F.2d at 1095-1125.

4

<u>Tinoco</u> is inapposite to this case in that the conspiracy was committed solely outside any state in the United States.

Similarly, in <u>Suerte</u>, the defendant was convicted of conspiracy to possess with intent to distribute narcotics on board a vessel in violation of the MDLEA. On appeal the defendant, a Philippine national and resident of Colombia who had never entered the United States, argued that due process required a nexus between a foreign citizen and the United States for extraterritorial application of the MDLEA. The issue of venue was not involved. Moreover, like <u>Tinoco</u>, and unlike this case, all of the conspiratorial activity committed by Suerte was outside the United States. 291 Fed.3d at 376.

4.   The government asserts that our conspiracy analysis "runs counter to the Supreme Court analysis" in <u>United States</u> v. <u>Rodriguez-Moreno</u>, 526 U.S. 275 (1999). Govt. Opp. at 8-9. We disagree.

In <u>Rodriguez-Moreno</u>, the defendant was prosecuted in the district of New Jersey for, <u>inter</u> <u>alia</u>, kidnapping, 18 U.S.C. § 1201, and using and carrying a firearm in relation to the kidnapping, 18 U.S.C. § 924(c). On appeal to the Third Circuit, defendant argued that he could not be prosecuted in New Jersey because although the kidnapping extended from Texas to New Jersey, he only possessed the gun in Maryland during the course of the kidnapping. The Third Circuit agreed and reversed the § 924(c) conviction. <u>United States</u> v. <u>Palma-Ruedas</u>, 121 F.3d 841

5

(3rd Cir. 1997).[4]

The Supreme Court reversed the Third Circuit noting that in questions of venue, the "locus delicti [of the charged offense] must be determined from the nature of the crime alleged and the location of the act or acts constituting it," citing United States v. Cabrales, 524 U.S. 1, 6-7. 526 U.S. at 279. The Court held that kidnapping is a "unitary" crime and does not end until the victim is free. Thus, although the defendant only used the weapon in Maryland, he possessed it "during and in relation to" a crime of violence that was begun in Texas and continued in New York, Maryland, and New Jersey, where defendant was prosecuted. Accordingly, under Article III, venue for the 924(c) offense was proper in any jurisdiction that the kidnapping continued -- just as venue is proper against a defendant in a district where a co-conspirator carried out overt acts even though the defendant never entered the district. 526 U.S. at 281.

We fail to see how Rodriguez-Moreno supports in any way the government's assertion that a § 963 conspiracy to violate § 959(a) is inherently "extraterritorial" irrespective of any analysis of the unique character of the crime of conspiracy as a separate offense from the underlying objective of the conspiracy as well as an analysis of when, where, and how a conspiracy is committed under general conspiracy law. See Def. Mot. at 19-27.[5]

_____

[4] Defendant's kidnapping related convictions were affirmed.

[5] By considering § 963, a conspiracy statute, in light of well settled principles of conspiracy law does not mean -- contrary to the
(continued...)

Indeed, it is the government -- not the defense -- that has failed to follow the principles of Rodriquez-Moreno.[6]

5.    The government asserts that "[c]ontrary to Cobar's argument (Mot. to Dismiss at 22-25), the conspiracy was not formed in Las Vegas." Govt. Opp. at 9.  The government is wrong.

As we show in our motion, the conspiracy was formed in Las Vegas, Nevada, during a series of calls that Cobar made from his phone in Las Vegas to Flaco in Guatemala and to Lucho in Costa Rica during December 8-13, 2003.  Indeed, it was this series of calls that caused the grand jury in Las Vegas to indict Cobar and his codefendants for the § 846 narcotics conspiracy.  Def. Mot. at 22-24.[7]  In effect, the government argues that the fact Flaco

_____

[5](...continued)
government's assertion -- that we are reading the statute in "isolation."  Govt. Opp. at 7.  We believe that our analysis is exactly what is called for by Rodriquez-Moreno.

[6]   As noted, Rodriquez-Moreno cited United States v. Cabrales as regards the language of determining the locus delicti of a crime for constitutional venue analysis.  In our initial motion, we cited Rodriquez-Moreno and the language used in Cabrales as the starting point to determine proper venue in this case.  Def. Mot. at 19, n. 32.

[7]   The government states that the defense "suggests the conspiracy was 'hatched' in Las Vegas because that is where [Cobar] met with an undercover agent," and that this argument is "legally without merit" because a defendant cannot conspire with a Government agent," citing several cases.  Govt. Opp. at 6, n. 6.  But, at no point in our motion do we make such a suggestion.  Our motion makes clear that the calls that form the conspiracy are calls between the defendants themselves during December 8-13, 2003, and not between Cobar and the undercover officer.  Def. Mot. at 22-25.  Counsel is well aware of the legal principle that an accused and a government agent cannot commit conspiracy as a matter of law, and we have not, and do not, argue to the contrary.

We do note, however, although one cannot conspire with a government agent, one can commit overt acts with a government agent in
(continued...)

and Lucho "never entered Nevada" means that the conspiracy could not legally have been committed by the defendants in Las Vegas during the December 9-13, 2003, series of calls.  Govt. Opp. at 9.  This argument completely ignores the well-settled principle that it is not necessary for a defendant to be present in a jurisdiction in order to enter into a conspiracy.  <u>Burton</u> v. <u>United States</u>, 202 U.S. 344, 388 (1906); <u>see</u> Def. Mot. at 25-28.[8]

6.  The government argues that defendant Cobar's "own analysis is consistent with the formation of the conspiracy abroad" and that defendants' extraterritorial overt acts "trigger § 959(c)."  Govt. Opp. at 9-10.  But, to the extent that the defendants can be said to have committed extraterritorial acts in forming and furthering the conspiracy, it does not follow that they can be prosecuted in D.C. under § 959(c) or 18 U.S.C. § 3238.

_____

[7](...continued)
furtherance of the conspiracy.  <u>See</u> <u>e.g.</u>, <u>United States</u> v. <u>Pardue</u>, 983 F.2d 835, 842 (8th Cir. 1993)(partial payment to undercover FBI agent as perpetrator was "the requisite overt act" in a § 371 conspiracy to commit murder for hire).  Thus, <u>after</u> the formation of the conspiracy, the calls and meetings between Cobar and the undercover officer and the confidential informant in Las Vegas, Nevada, and Miami, Florida, constitute overt acts and are relevant to the venue issue.  <u>See</u> Def. Mot. at 24-28.

[8]  <u>Travis</u> v. <u>United States</u>, 364 U.S. 631, 636 (1961), cited by the government, is inapposite.  <u>Travis</u> involved a prosecution for making a false statement in an affidavit that under law had to be filed in Washington, D.C., under § 9(h) of the National Labor Relations Act.  The Supreme Court held that venue was proper only in D.C. where the affidavit had to be filed and not in Colorado where the affidavit was mailed.  It was in this context that the Court said "[v]enue should not be made to depend on the chance use of the mails, when Congress has so carefully indicated the <u>locus</u> of the crime."  364 U.S. at 636.  Here, unlike <u>Travis</u>, Congress has not "carefully indicated" the <u>locus</u> of the crime.  Indeed, the <u>locus</u> of the crime is the very issue that has to be decided in this case.

a.   As shown, under the facts of this case, the defendants formed and furthered the conspiracy in the States of Nevada and Florida. <u>See</u> Def. Mot. at 21-28, and 2, n. 4.[9] Accordingly, irrespective of defendants' extraterritorial acts, this is not a crime "<u>not committed within any State</u>" under Article III.

b.   Citing <u>Hyde</u> v. <u>United States</u>, 225 U.S. 347, 360 (1912), the government argues that since the conspiracy was committed in multiple jurisdictions (extraterritorial and non-extraterritorial), the government is free to try the offense in D.C. under 18 U.S.C. § 3237." Govt. Opp. at 10.  This does not follow.  <u>Hyde</u> dealt with a case involving multiple jurisdictions <u>within</u> the United States and where venue was proper in either jurisdiction under § 3237.  Under <u>Hyde</u>, defendants could be prosecuted either in Nevada or in Florida (but not in D.C.).

It is undisputed that the defendants did not form or further the conspiracy in the District of Columbia, either by being physically present in the District or by making any communications, <u>e.g</u>., phone calls, telexes, or wire transfers, to or from the District.  Thus, we fail to see how venue could lie

---

[9]   We note again that the D.C. indictment alleges that the defendants committed the conspiracy "in Guatemala, Nicaragua, and <u>elsewhere</u>." (Emphasis added.)  Under the facts of this case, the geographical "elsewhere" referred to in the D.C. indictment obviously includes Las Vegas, Nevada, and Miami, Florida.  In short, the D.C. indictment itself establishes probable cause that defendants committed the § 963 conspiracy in Nevada and Florida (as well as in Guatemala and Nicaragua).

in the District under § 3237.[10]

c. In short, the government cannot escape the conclusion that defendant Cobar's illegal agreement with Flaco and Lucho to sell the undercover officer 400 kilos of cocaine in Panama for importation into the United States was hatched in the State of Nevada and furthered in the States of Nevada and Florida.

As we have argued (Def. Mot. at 32-34), to have proper venue in the District of Columbia under § 959(c), the government would first have to amend Article III, Section 2, Clause 3 to read as follows:

> The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where said Crimes shall have been committed; but when not committed within any State **or when committed both within a State and outside a State**, the Trial shall be at such Place or Places as the Congress may by Law have directed. (Amending language in bold.)

---

[10] Like Hyde, both United States v. Smith, 452 F.3d 332 (4th Cir. 2006), and United States v. Bowens, 224 F.3d 302 (4th Cir. 2000), cited by the government at Govt. Opp. 10), involve multiple jurisdictions within the United States. The cases follow the settled rule that venue may lie in any jurisdiction within the United States where the crime is committed. In Smith, the court ruled that venue was proper in the Eastern District of Virginia, while in Bowens, the court reversed defendant's convictions for harboring a fugitive because of improper venue. 224 F.3d at 314.

In United States v. Williams, 589 F.2d 210 (5th Cir. 1979) (Govt. Opp. 10), the court rejected a claim that a single overt act in the United States precluded jurisdiction under 18 U.S.C. § 3238 where the conspiracy to import marijuana was committed solely on the high seas. Unlike this case, the conspiracy at issue was not entered into in any State in the United States; only one overt act was assertedly committed in the United States; and it does not appear that defendant expressly objected to venue on Article III constitutional grounds. 589 F.2d at 212-213.

After amending Article III, the government would then have
to turn to § 959(c) and amend it as follows:

> This section is intended to reach acts of
> manufacture or distribution committed outside
> the territorial jurisdiction of the United
> States **or committed in part outside the
> territorial jurisdiction of the United States
> and in part within the territorial
> jurisdiction of the United States**.  Any
> person who violates this section **or who
> conspires to violate this section as
> prohibited by subsection 963** shall be tried
> in the United States district court at the
> point of entry where such person enters the
> United States, or in the United States
> District Court for the District of Columbia.
> (Amending language in bold.)

Without these amendments, the government's argument for
venue in D.C. is unavailing.

7.   As regards the government's criticism (Govt. Opp. at
10-12) of United States v. Gilboe, 684 F.2d (2nd Cir. 1982), upon
which we rely, we make the following points.

a.   The government stresses that this case involves
the mandatory "shall be tried" venue provision of § 959(c) and
not the permissive "may" venue provision of 18 U.S.C. § 3238,
which was dealt with in Gilboe.[11]  The government's heavy
emphasis on the "shall be tried" language of § 959(c), however,
is unwarranted.

In United States v. Zabaneh, 837 F.2d 1249 (5th Cir. 1988),

---

[11]   In this section of its argument the government cites United
States v. Rendon, 354 F.3rd 1320 (11th Cir. 2003), and United States
v. Mosquera, 192 F.Supp.2d 1334 (M.D. Fla. 2002).  These cases are
inapposite to the issue presented here.  Unlike this case (and unlike
Gilboe), both of the cases involve criminal drug activity that was
committed exclusively outside the United States.

the defendant was prosecuted in the Northern District of Texas
for several narcotics offenses, including a violation of 21
U.S.C. § 959(a), which arose out of a single shipment of
marijuana from the country of Belize to Texas.  Defendant argued
that since he entered the United States at Houston, Texas, which
is in the Southern District of Texas, venue was proper only in
the Southern District of Texas in the District of Columbia under
the mandatory venue provision of 21 U.S.C. §959(c).  The Fifth
Circuit rejected this argument as follows:

> There is significant difference between the
> phrases "shall be tried" [contained in 21
> U.S.C. § 959(c)] and "may be prosecuted only"
> [contained in 18 U.S.C. § 1073].  We have
> previously held that another statute with
> "shall" language, 18 U.S.C. § 3238, is not to
> be construed as an express exception to the
> broad provision for venue under § 3237(a).
> The same reasoning applies here to uphold
> venue under § 3237(a).  In addition, a member
> of an alleged conspiracy may be tried in any
> district where an overt act takes place, even
> if he has 'never set foot' there. [Citations
> omitted.] 837 F.2d at 1256.

Simply put, the purported "mandatory" language of § 959(c)
is not quite as "mandatory" as the government would have it.

b.   The government correctly notes that in United
States v. Levy Auto Parts of Canada, 787 F.2d 946, 950-951 (4th
Cir. 1996), the court characterized the venue language of Gilboe
as dictum.  Levy involved a conspiracy prosecution under 18
U.S.C. § 371 to violate the Arms Export Control Act, 22 U.S.C. §§
2751-2794.  During the course of the conspiracy, which was formed
and furthered by the defendants in Greece, Pakistan and Iran, one
of the defendants requested some technical information from

12

Teledyne Continental Motors in Muskegon in the Western District of Michigan. Id. at 948. The defendants argued that venue should lie in Michigan under 18 U.S.C. § 3237 and not in the Eastern District of Virginia under 18 U.S.C. § 3238, where they were arrested.

On appeal, the court concluded that the perpetration of the overt act in the Western District of Michigan did not under the particular facts of the case preclude venue in the Eastern District of Virginia under § 3238. In reaching its conclusion, the Fourth Circuit went out of its way to emphasize: (1) that "this is not a case calling for a broad holding"; (2) that the conspiracy was entered into outside the United States and was "essentially foreign"; (3) that the conspiracy did not "produce substantial activity in furtherance of its purpose in the United States"; (4) that it was far from clear whether the sole overt act assertedly committed in the United States "had any connection with the conspiracy"; (5) that assuming the overt act was related to the conspiracy, it was "insubstantial"; and (6) that there was no apparent "unfairness" in the prosecution of the defendants in the Eastern District of Virginia as opposed to the Western District of Michigan in that none of the defendants "reside[d] in the Western District of Michigan or had "a substantial connection with that district." 787 F.2d at 952. As is obvious, the facts in Levy are qualitatively different than the facts in this case, especially as regards defendant Cobar.

      c.    The government's citation to United States v.

13

Jensen, 93 F.3d 667 (9th Cir. 1996), requires clarification
because the opinion for the court, as distinguished from the
concurring opinion, is not "inconsistent" with Gilboe.    In
Jensen, the defendants were charged with operating a vessel in a
grossly negligent manner in violation of 46 U.S.C. § 1090.
Defendants moved pretrial to dismiss the indictment on the
grounds that venue in the Western District of Washington was
improper because at the time the crimes were alleged to have been
committed, the vessels were either in Alaskan waters or on the
high seas.   To support their claim the defendants presented the
trial court with various maritime reports and affidavits.    On the
basis of these documents, the trial court dismissed the charges
for lack of venue.   On appeal, in an opinion by Judge Kozinski,
joined by Judge Leavy, the court reversed on the grounds that the
trial court "erred in considering the documentation provided by
the defendants."   After reviewing the charging documents, the
court expressly did not reach the issue whether § 3238 applies
only on the high seas and not in any district.   As the court
stated:

> We do not reach this issue, as it makes no
> difference in this case.   If section 3238
> applies, then venue in the Western District
> of Washington is proper as the place of
> Jensen's and Peterson's last known
> residences.   If 3238 is not applicable, venue
> is still proper as the place where the crime
> was committed. [Citations omitted.] 93 F.3d
> at 70.

In a concurring opinion, Judge Fletcher stated that
"[a]lthough the issue is not free from doubt, I would hold that

14

18 U.S.C. § 3238 is applicable despite the vessels' traveling in Alaskan waters," citing, <u>inter alia</u>, <u>United States</u> v. <u>Levy Auto Parts</u>, <u>supra</u>.  93 F.3d 671.  (Emphasis added.)

        d.   <u>United States</u> v. <u>Erwin</u>, 602 F.2d 1183 (5th Cir. 1979), also cited by the government as "inconsistent" with <u>Gilboe</u>, involved a prosecution in the Eastern District of Louisiana for conspiracy to import marijuana and conspiracy to possess marijuana with intent to distribute.  The charges arose from a seizure by the Coast Guard of marijuana from a vessel that defendants were operating in the Gulf of Mexico.  Venue was based on § 3238 where the defendants were first brought into the United States.  At trial the defendants moved for a bill of particulars specifying where "in the Eastern District of Louisiana, and elsewhere" the conspiracy charge in the indictment allegedly occurred.  The government's response indicated that "some of the marijuana was coming to the Eastern District of Louisiana."  On appeal, the defendants contended that because the government failed to prove that the destination of any of the marijuana was the Eastern District of Louisiana, venue was improper in that district.  <u>Id</u>. at 1184-1185.

The Fifth Circuit affirmed on the grounds that venue was proper under § 3238 because the offense occurred on the high seas and it was not necessary for the government to prove for purposes of venue that an overt act was committed in the Eastern District of Louisiana where the defendants were first brought.  In a statement completely unnecessary to its decision, the court cited

United States v. Williams, 589 F.2d 210 (5th Cir. 1979), for the
proposition "[t]hat venue may also be appropriate in another
district will not divest venue properly established under
§ 3238." 602 F.2d at 1185. Thus, the holding of Erwin is not
inconsistent with Gilboe because Erwin (unlike the case here and
unlike Gilboe) did not involve any criminal activity in the
United States.

As regards Williams, cited by the Fifth Circuit in Erwin, we
have already noted supra at 10, n. 10 the differences between
Williams and our case. In Williams, unlike this case, the
conspiracy was formed by acts committed entirely outside the
United States. Moreover, the criminal activity in the United
States during the life of the conspiracy was limited solely to
one overt act committed in New York. In addition, there is no
indication that the defendant expressly objected to venue on
Article III constitutional grounds -- either at trial or on
appeal. 589 F.2d at 212-213. Thus, we do not believe that
Williams weakens the viability of Gilboe to this case in any
material way.

e. Lastly, in United States v. Bin Laden, 91
F.Supp.2d 600 (S.D.N.Y. 2000), one of the defendants argued
pretrial that certain substantive bombing counts should be
dismissed for improper venue under § 3238 because some of the
bombing activity occurred inside the United States but not in the
Southern District of New York where the case was being
prosecuted. In support of this argument, the defendant relied on

16

Gilboe.  The government argued (as it argues here) that the venue statement in Gilboe was "dictum and in conflict with several decisions in other circuits," citing the very same cases as the government cites here -- Levy, Erwin, Williams, and Jensen.  Id. at 613 and n. 23.  Judge Sand denied the motion to dismiss but not because he viewed Gilboe as wrongly decided:

> We need not resolve [the Gilboe] dispute here, however, because, even assuming that Mr. Odeh's interpretation of § 3238 is correct, we are not convinced that the substantive bombing counts of the Indictment allege conduct that occurred within the jurisdiction of a particular state.  Id. at 614.

In sum, Gilboe still carries weight and should not be discounted as the government would have it.

8.  As regards the government's "nullity" argument (Govt. Opp. at 12-13), we simply point out that the Court is not dealing with the hypothetical situation posed by the government in which the conspiracy at issue in 99.9999% extraterritorial but for a "single phone call to any place in the United States."

Unlike the hypothetical, in this case the Court is dealing with a situation where under the well-settled law of conspiracy, the conspiracy itself was formed and committed by defendant Cobar[12] in Nevada and was furthered by Cobar via numerous overt acts within Nevada and Florida over a period of months.[13]  As a matter of established law, and as a matter of common sense, it

---

[12]  See Def. Mot. at 2, n. 4.

[13]  See Def. Mot. at 6-10.

cannot be said that defendant Cobar's crime was "not committed within any State" within the meaning of Article III.

Further, virtually all of the concerns that led the Founding Fathers to enact Article III (and the Sixth Amendment) to insure that an accused who commits a crime in a State is entitled to be tried in that State are especially applicable to defendant Cobar.[14]

Lastly, contrary to the government's suggestion, to grant Cobar's motion under the particular facts of this case will in no way "eviscerate Congress's long standing constitutional authority to designate venue when a crime occurs outside of a state." Indeed, granting the motion will ensure that the government's use of § 959(c) be held in check -- to be used only in those cases where it can be safely said under Article III that the accused's crime was "not committed within any State." Such limitation -- in our view -- furthers the true intent of Congress in enacting § 959(c).[15]

_____

[14]    The government tries to minimize defendant Cobar's assertions of prejudice from being denied his Article III rights. Govt. Opp. at 14. As shown in our motion, the losses that defendant Cobar has suffered and will suffer as a result of improper venue in D.C. are real and they are exactly the kinds of losses that the Founding Fathers wanted to protect against by wording Article III and the Sixth Amendment the way they did. Def. Mot. at 37-39.

[15]    The government argues that granting this motion will lead to an "absurd" result in that defendant Cobar (and his codefendants) will escape any liability for conspiracy to violate § 959(a) because he cannot be prosecuted in Las Vegas in that there is no venue in Las Vegas under § 959(c). Govt. Opp. at 12-13. This argument is specious because it assumes that venue for a § 963 conspiracy to violate § 959(a) must always as a matter of law be controlled by § 959(c). But, of course, that is the issue to be decided by this Court. If we are correct, and venue does not lie in D.C. under § 959(c), but rather
(continued...)

18

## CONCLUSION

For all of the foregoing reasons, defendant Cobar respectfully submits that the government has failed to carry its burden to prove that venue in the District of Columbia is constitutionally permissible under the facts of this case.

Accordingly, we ask the Court to dismiss the indictment against defendant Cobar for lack of venue.

Respectfully submitted,



/s/
James L. Lyons  (50690)
Kellogg, Williams & Lyons
1925 K Street, N.W., Suite 200
Washington, D.C.  20006
(202) 496-0722

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was electronically served on all interested parties on this 25th day of August, 2006.

/s/
James L. Lyons

---

[15](...continued)
lies in Las Vegas, Nevada, (or in Miami, Florida), the government has advanced no reason why the Narcotic and Dangerous Drug Section of the Department of Justice cannot prosecute the defendants either in Las Vegas or in Miami for the same offense as charged here.

19